## Bodine Trust.

Argued January 15, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Morris Wolf*, with him *William H. Rivoir, Jr., Edward M. Glickman*, and *Gawthrop and Greenwood*, and *Wolf, Block, Schorr and Solis-Cohen*, for appellant.

*Alan Reeve Hunt*, with him *Duane, Morris & Heckscher*, for appellee.

OPINION BY MR. JUSTICE COHEN, March 15, 1968:

This is an appeal by the Trustees of the University of Pennsylvania from a decree awarding the income of Miss Bodine's trust to the Trustees of Kenyon College.

The pertinent terms and provisions of the inter vivos deed of trust are as follows: "Upon the death of Settlor, Trustee shall (i) set apart out of the principal as an enduring memorial to Settlor's dear friend, Nina F. Lewis, the sum of twenty-five thousand ($25,000) dollars, and shall hold the same in perpetual trust, to pay the entire net income thereon unto the Woman's Hospital of Philadelphia, now located at Preston and Parrish Streets, Philadelphia, to be used by said hospital in its discretion for the purposes of either or both its out-patient and social service work . . . If at any time an *event occurs* which would *necessitate* the ap-

262

plication of the doctrine of *cy pres* to this trust fund *in the absence of a gift over* then upon the occurrence of such event, Trustee shall pay the entire net income to the Trustees of Kenyon College situate at Gambier, Ohio, for the general purposes of said college." (Emphasis supplied.)

Since the gift-over to Kenyon College will only arise when an event occurs necessitating the application of the doctrine of cy pres, the sole question before our Court is whether the subsequent merger of Woman's Hospital with the University Hospital was an event which would necessitate cy pres.

The lower court, in its adjudication, concluded "that by reason of the discontinuance of the Woman's Hospital as a separate corporate entity the income [of the trust] should be awarded to the Trustees of Kenyon College." Implicit in its determination is the adoption of the principle that a merger *per se* gives rise to the application of the doctrine of cy pres since in the absence of such an event under the plain terms of the deed of trust, the Trustees of Kenyon College would not be entitled to the income of the trust.

Under the Estates Act of 1947, the legislature has prescribed the necessary circumstances, which, if present, would allow the courts *in their discretion* to apply the doctrine of cy pres. The Act of 1947, §10 provides in pertinent part as follows: "Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impractical of fulfillment, . . . the court may, on application of the trustee or of any interested person or of the Attorney General of the Commonwealth, after proof of notice to the Attorney General of the Commonwealth when he is not the petitioner, order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the con-

veyor, whether his charitable intent be general or specific."

It is quite apparent that the language of the Act of 1947 makes applicable the doctrine of cy pres *only* in the event that the charitable purposes of the conveyor are frustrated and incapable of fulfillment. Hence, we must determine whether a merger *per se,* without considering the effects of the merger on the utilization of the trust funds, is sufficient to frustrate the purposes of a charitable trust necessitating the application of cy pres.

We are of the opinion that the consummation of a merger *per se* in no way affects or frustrates the charitable purposes of a trust fund and does not generate an event which would necessitate the application of cy pres. The Act of May 5, 1933, P. L. 289, §809 as amended, 15 P.S. §7809, provides, inter alia, as follows: "Any devise, bequest, gift or grant contained in any will or other instrument, in trust or otherwise, made before or after such merger or consolidation, to or for any of the constituent corporations, *shall inure to the surviving or new consolidated corporation,* as the case may be." (Emphasis supplied.)

As indicated in 4 Scott, Trusts §397.3 (3d ed. 1967) and Restatement 2d, Trusts, §399, comment o (1959), the consolidated corporation or the surviving corporation as the case may be will be entitled to receive the trust funds as a matter of law, unless the settlor evidences a different intention. The very language of the Act of 1933 precludes the applicability of cy pres when the only basis for its invocation is that the instrumentality administering the trust has ceased to have a separate corporate existence as a result of a merger. The legislature in the Estates Act of 1947 has vested discretionary powers in the courts to administer a charitable trust which fails to achieve the settlor's purposes. If the settlor's purposes are not being fulfilled, the court *in its discretion* under the doc-

trine of cy pres could administer or distribute the trust funds "in a manner as nearly as possible to fulfill the intention of the conveyor." In contradistinction to the discretionary powers vested in the courts under the doctrine of cy pres, the Nonprofit Corporation Law provides that the surviving corporation as a matter of law is entitled to the trust funds of the merged corporation. This *unqualified, nondiscretionary* right prevents a court from distributing the funds under the doctrine of cy pres to another entity solely on the basis of a merger *per se*.[1] The only situation in which the funds would not inure to the benefit of the surviving corporation (and not as a result of cy pres) is if the settlor clearly manifested an intent to the contrary. Here the settlor manifested an intent that Kenyon College would acquire the trust funds *only* if an event occurred necessitating the application of cy pres. The fact that Woman's Hospital has merged with University Hospital is *not* the type of *event* which, standing alone, *necessitates* the application of cy pres.

Moreover, it is the utilization of those trust funds which may or may not generate cy pres and not the merger itself. If the surviving corporation continues to carry out the terms of the trust in accordance with the settlor's intent the doctrine of cy pres would never apply, since the funds would not be utilized in a manner which frustrates or renders incapable of fulfillment the charitable purposes of the settlor.

Therefore, in order to determine whether cy pres would apply in the instant case, we must consider the effects of the merger between Woman's Hospital and University Hospital with respect to the contem-

---

[1] This section of the Nonprofit Corporation Law is a recognition by the legislature that a merger *per se* has absolutely no effect on the fulfillment of a settlor's charitable purposes and hence if the funds are still being expended as the settlor intended cy pres would have no application.

plated utilization of the trust funds. Pursuant to the terms and provisions of the Joint Plan of Merger all trust funds acquired by University Hospital as a result of the merger will continue to be utilized in conformity with the express intent of their creators.[2] Nevertheless, we are not unmindful of the fact that in the event University Hospital fails to perpetuate the charitable purposes of the settlor, such failure will be an event necessitating the application of cy pres and will serve to invoke the gift-over of the trust funds to Kenyon College. However, until that event occurs the University Hospital and not Kenyon College is entitled to the trust funds. Since the settlor did not provide a gift-over in the event of a merger, and since the application of cy pres at this time would be improper, we must conclude that the lower court erroneously awarded the income of the trust to the Trustees of Kenyon College.

Decree reversed and the case remanded to the lower court for further action consistent with this opinion. Each party to bear own costs.

---

[2] The Joint Plan of Merger provides in pertinent part as follows: "All devises, gifts or grants contained in any will or other instrument, in trust or otherwise, made before or after this merger to or for either University or Woman's Hospital, shall inure to University and shall be preserved, held and used exclusively according to the terms and conditions of such devises, bequests, gifts or grants."

It is important to note that University Hospital performs the identical functions and services which were rendered by Woman's Hospital prior to the merger. In fact the Joint Plan of Merger provides that the treatment of diseases of women and children, the care of obstetrical cases and the training of nurses will be substantially expanded in light of the merger with Woman's Hospital. This indicates that University Hospital does contemplate that the trust funds it receives as a result of the merger will be utilized for the same purposes for which such funds were given to Woman's Hospital.